UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
LYNDA CUTBILL,

                                    Plaintiff,                          21 Civ. 3326

                 -against-                                              **COMPLAINT**
                                                                        **JURY DEMANDED**
COLD SPRING HARBOR CENTRAL SCHOOL
DISTRICT and COLD SPRING HARBOR CENTRAL
SCHOOL DISTRICT BOARD OF EDUCATION,

                                    Defendants.

---------------------------------------------------------------------x

       Plaintiff Lynda Cutbill, by and through her attorneys, Emery Celli Brinckerhoff

Abady Ward & Maazel LLP and Shubin Law, P.C., for her Complaint alleges as follows:

                               **INTRODUCTION**

       1.     From 1978 through 1982, Cold Spring Harbor High School (the "School" or

"CSHHS") teacher William Kail ("Kail") sexually abused Lynda Cutbill ("Plaintiff"), a student

in his art classes, hundreds of times.  In a horrific procession, beginning when she was a twelve-

year-old junior high school student and continuing until she graduated in 1982, Kail targeted,

groomed, sexually assaulted, and then repeatedly raped Lynda.

       2.     Defendants knew that Kail was a sexual predator who presented an imminent

danger to its female students.  Two years before Lynda graduated, and during the time period

Kail was sexually abusing Lynda on an almost daily basis, administrators were provided with

detailed information that Kail was sexually abusing another CSHHS art student.

       3.     Despite this explicit warning, and the serious and ongoing threat Kail posed to

other children, the Defendants took no action to protect Lynda or any other District student.

Instead of removing Kail from his teaching position, the District kept him on staff, providing him

easy access to vulnerable teenage girls and enabling and emboldening him to continue abusing Lynda with increased frequency and severity.

4.      Throughout the time period Kail sexually abused Lynda, the School provided Kail unfettered and unsupervised access to secluded, windowless spaces on school grounds—an office and a supply closet—which he then used as a venue to assault Lynda during the school day on hundreds of occasions beginning in middle school and persisting beyond her 1982 high school graduation.

5.      For years, the School gave Kail power over, and access to, children which he used to abuse them, laying waste to their promising young lives in the process.

6.      In what would be criminal conduct today, the highest ranking District officials deliberately withheld the information reported to them—that Kail had sexually abused a child— from the police and chose instead to engage in a decades-long sexual abuse cover up – prioritizing the School's reputation over its integrity.  The Defendants must now be held accountable.

7.      Defendants' inaction completely derailed Lynda's life and caused her decades of trauma, suffering, and pain which persist to this day.  The District stole Lynda's childhood, promise, and potential from her.

8.      Lynda Cutbill brings this action pursuant to this Court's diversity jurisdiction and New York's Child Victim Act, which makes her claim timely, to seek compensation for the harms she has suffered.

## THE PARTIES

9.     Lynda Cutbill ("Plaintiff") is a natural person and a citizen of the State of Maryland.  From 1978 to 1982, Lynda was a Cold Spring Harbor High School student in Cold Spring Harbor, New York, a school within the Cold Spring Harbor School Central District.

10.     Defendant Cold Spring Harbor Central School District (the "District") is a municipal corporation that maintains its principal place of business at 75 Goose Hill Road, Cold Spring Harbor, New York 11724, in Suffolk County. At all relevant times, the District owned, operated, and maintained Cold Spring Harbor Junior/Senior High School located at 82 Turkey Hill Lane, Cold Spring Harbor, New York 11724, in Suffolk County. At all times relevant hereto, the District employed William Kail as an art teacher.

11.     Defendant Cold Spring Harbor Central School District Board of Education (the "Board") is a corporate body established pursuant to the laws of New York State that maintains its principal place of business at 75 Goose Hill Road, Cold Spring Harbor, New York 11724, in Suffolk County.  At all relevant times, upon information and belief, the Board was responsible for setting the policy of the District and hiring and firing teachers, administrative staff, and the School superintendent.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the amount in controversy exceeds $75,000.

13.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Eastern District of New York.

14.     This action is timely pursuant to the New York Child Victims Act, N.Y. CPLR §
214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury
suffered as a result of conduct which would constitute a sexual offense under Article 130.65
(sexual abuse in the first degree) of the New York Penal Law and Section 263.05 of the New
York Penal Law (use of a child in a sexual performance), and Plaintiff  was less than eighteen
years old when such conduct was committed against her.

## JURY DEMAND

15.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

16.     William Kail was a popular Cold Spring Harbor teacher.  Himself a talented artist,
Kail styled himself as a mentor to creative students, and bragged about his ability to make
connections for his students in the art community and to assist in getting them accepted into
prestigious art colleges.

17.     In addition to his classroom, CSHHS provided Kail with a secluded and
windowless office and an art supply closet.

18.     Beginning in her last year of middle school and lasting beyond her high school
graduation, Kail used his private office and supply closet to sexually assault Lynda multiple
times a week.

19.     Lynda was a twelve-year-old CSH Middle School seventh grader when Kail
began targeting her for grooming and sexual abuse that would last without interruption through
her graduation, and even after she graduated.

20.     As a twelve-year-old seventh grader, Kail paid special attention to Lynda even though she was assigned to a different art class.  Kail began conditioning Lynda to his touch by holding her hand and pushing her hair back behind her ears.

21.     When Lynda was an eighth grade student in Kail's art class, his conditioning and grooming progressed:  he sat close to her during class, pressing his body against her; he rubbed her thighs underneath her desk; and he cradled her face in his hands and complimented her on her looks.

22.     Kail carefully and meticulously groomed Lynda for abuse, manipulating her to gain her trust so that he could control, and gain sexual access to, her.

23.     Kail inundated Lynda with gifts, love letters, and notes.  He methodically isolated Lynda from her family, peers, and other teachers. Kail then "offered" to fill the void in what would have been a normal high school social life with a twisted "love affair."

24.     Kail weaponized Lynda's talent as an artist by promising her that he would be her mentor, telling her she was special and convincing her that only through him could she actualize the artistic potential given to her by God.

25.     Kail brought Lynda into his private, secluded, windowless art closet at the School for the first time when she was in eighth grade.  He told her that he chose her above all others for such a privilege based upon her artistic talents.

26.     In the art closet, Kail ordered Lynda to remove her clothes.  She complied.  He removed his clothes.  After Kail was naked and erect, he began touching Lynda's genitals.

27.     By ninth grade, Kail sexually assaulted Lynda regularly on school days and in progressively serious ways.  Early that year, Kail brought Lynda into the art closet, pulled down his pants, and aggressively grabbed her head, forcing her to perform oral sex on him.

28.     From that point forward, Kail sexually assaulted Lynda, mainly in the art closet or in his private office, hundreds of times, on a regular basis, multiple times a week.

29.     Kail forced Lynda to perform oral sex on him and to submit to him performing oral sex on her.  Kail groped Lynda's genitals, penetrated and masturbated her with his fingers, and forced her to masturbate him.

30.     On one occasion, Kail asked Lynda and another CSHHS student to his home art studio and, under the guise of an art project, manipulated them into posing naked for him.

31.     Kail then forced Lynda to submit to him performing oral sex on her.  Kail then raped Lynda, forcing his penis into her vagina and ejaculating inside of her without using a condom.

32.     Thereafter, beginning in eleventh grade, Kail repeatedly raped her.  Kail regularly sexually abused Lynda during her time as a CSHHS student and continuing beyond her 1982 graduation—including during the summer after she graduated when she was still a minor.

33.     On a regular basis, Kail picked Lynda up from her bus stop as she awaited the bus and drove her to school in his personal vehicle.  Kail also drove Lynda home after school.

34.     On at least one occasion, after she got into his truck, Kail forced her to perform oral sex on him before dropping her off at the School.  Other times, Kail unbuttoned Lynda's shirt and groped her breasts, forcing her to quickly cover up before reaching the school.

35.     Kail and Lynda entered and exited his truck in the staff parking lot and in plain view of teachers, administrators, and students.

*Defendants Had Actual Notice That Kail Sexually Abused a Female High School Student Prior to and During the Same Time Period He Sexually Abused Lynda*

36.     Between the years 1974 and 1983, Kail would offer good grades and recommendations to female students in return for them agreeing to pose in the nude for him in his secluded school office.

37.     On at least one occasion, a witness observed Kail exiting his art closet with a female student.

38.     During much of the time Kail abused Lynda, he was also abusing another female student CSHHS art student who was a minor, referred to here as Student #1 to protect her privacy.

39.     Kail sexually assaulted Student #1, forced her to pose nude, and displayed paintings of her naked body in his art supply closet.

40.     Like trophies for a serial pedophile and predator, Kail covered the walls of the CSHHS art supply closet with nude paintings of Lynda and Student #1.

41.     During the 1979-80 academic year, Youth Center staff members separately reported to the most powerful school administrators, including the Superintendent, that Kail was sexually abusing Student #1.

42.     Even after receiving a direct report that Kail was sexually abusing a student under his care, CSHHS failed to protect Lynda or the rest of its student body.

43.     The School did not report Kail's abuse of Student #1 to the police.

44.     The School continued to employ Kail as an art teacher.

45.     The School permitted Kail continued unsupervised access to his private closet and office space.

46.     The School did not give teachers, parents, or students—including Lynda, with whom they knew Kail had a close relationship—any warning that there was a predator in their midst.

47.     Kail abused Lynda both before and after his abuse was reported to District's most powerful administrators.

48.     Kail manipulated Lynda, her teachers, and others in order to gain sexual access to her throughout, and before and after, the school day.

49.     Kail  designed a permanent hall pass for Lynda on parchment paper (instead of the regular paper stock) and instructed her  to show the pass to her teachers when he wanted  to have her removed from classes so that he could sexually access her.  Kail gloated to Lynda that with the pass he would have sexual access to her whenever he wished.

50.     Kail manipulated Lynda's schedule so that he would supervise her during multiple independent study art classes.

51.     Kail pulled strings to ensure that Lynda's lunch period coincided with his, which provided him more opportunity to abuse her.

52.     Kail drove Lynda to and from school, brazenly instructing her to enter and exit his truck in the staff parking lot and in plain view of passing administrators, staff, and students.

53.     In an obvious cry for help, then fourteen-year-old Lynda used make-up to create the appearance of facial bruising and went to nurse's office hoping that the nurse would believe that she had been assaulted and would protect her.

54.     Lynda's plan failed:  School administrators punished her with detention after discovering that she had faked the injury.

55.     School staff similarly made no effort to address Lynda's plummeting freshman year grades.

56.     Tragically, indefensibly, the Defendants did nothing to protect Lynda despite these urgent and alarming red flags, and took no steps to monitor a known, dangerous sexual predator or curtail the unfettered access to the secluded abuse venues with which they provided him.  The administrators who chose not to report Kail's child sexual abuse of Student #1 to the police would, today, be prosecuted for serious criminal offenses.

57.     As a result of Defendants' conduct, Lynda suffered and continues to suffer from the physical and psychological harm of years of sexual abuse, assaults, and rape, as well as debilitating emotional pain and anguish.

### FIRST CAUSE OF ACTION
**Negligence**

58.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

59.     Defendants had a duty to take reasonable steps to protect Lynda—a child and high school student—from foreseeable harm when she was under its supervision and in its care, custody, and control.

60.     Defendants also had a duty to take reasonable steps to prevent Kail from taking advantage of his position as a teacher to sexually abuse Lynda.

61.     Defendants exercised supervision, care, and custody over Lynda when she was a student enrolled at the School, including, without limitation, off-campus activities during which time Defendants had a duty to take reasonable steps to protect her.

62.     Defendants breached the aforementioned duties by failing to exercise reasonable care to prevent the sexual abuse of Lynda from occurring.

9

63.     Defendants breached these duties by, *inter alia*, hiring, retaining, and failing to supervise Kail and providing him with unfettered access to Lynda; by failing to require sufficient supervision and oversight of teachers during the school day; by failing to train its personnel in the common signs of sexual abuse or "grooming" of prospective abuse victims; by failing to warn Plaintiff, her parents, and other parents about the danger of sexual abuse; and by entrusting their premises and instrumentalities to Kail, who they knew or should have known to be sexual predator.

64.     Defendants failed to take steps to protect girls, including Lynda, from Kail's sexual abuse.

65.     Defendants failed to institute readily available policies and practices that would have prevented Kail's foreseeable sexual abuse of Lynda and others, including:

a.   Terminating any teacher—such as Kail—who engaged in sexual activity with a student or, at a bare minimum, enhanced supervision and monitoring of any such teacher;

b.   Prohibiting teachers from bringing students into private windowless offices and other spaces unless there was another adult present or the door remained open;

c.   Training School staff, as well as students and their families, concerning how to report violations of safety policies;

d.   Training School staff, as well as students and their families, concerning how to recognize common signs of sexual abuse or "grooming" of prospective abuse victims;

e.   Requiring School staff to report signs of sexual abuse or grooming; and

      f.   Issuing standardized protocols for investigating and appropriately managing sexual misconduct allegations.

66.    During the time period relevant to this action, Defendants had the ability to require, and, on information and belief, did require, various kinds of safety-related training and education concerning known hazards to students. Yet no such monitoring, control, training, or education was implemented with respect to addressing or preventing child sexual abuse in the School.

67.    In breaching these duties, Defendants, through its acts and omissions, created and/or increased the risk that Lynda would be sexually abused.

68.    The sexual abuse Lynda suffered was a reasonably foreseeable result of Defendants' breach of their duties.

69.    As a direct and proximate cause of Defendants' negligence, Lynda suffered the damages hereinbefore alleged.

## APPORTIONMENT ALLEGATIONS

70.    At all times relevant hereto, Defendants acted with reckless disregard for the safety of others.

71.    At all times relevant hereto, Defendants acted knowingly to cause the acts or failures upon which liability is based.

72.    Defendants are not entitled to protection under CPLR 1601 because of the exclusions set forth in CPLR 1602(2)(iv), 1602(7), and 1602(11).

73.    At all times relevant hereto, Defendants had a non-delegable duty to Lynda, acted with reckless disregard for the safety of others, and acted knowingly or intentionally, and in concert with Kail.

74.     By reason of the foregoing, Defendants are precluded from limiting their liability through the apportionment of liability to any joint tortfeasor.  Moreover, upon information and belief, Kail died on January 15, 2021.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1.     Compensatory damages in an amount to be determined;

2.     An order awarding Plaintiff reasonable attorneys' fees, together with costs and disbursements; and

3.     Such other further relief as the Court may deem just and proper.

Dated: June 14, 2021

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:    _____
Debra L. Greenberger
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Andrew Shubin*
Shubin Law, P.C.
333 South Allen Street
State College, PA 16801

*Attorneys for Plaintiff*
*\*Application for admission Pro hac vice
pending*